| UNITED STATES DISTRICT COURT | C/M |
| EASTERN DISTRICT OF NEW YORK | |

---------------------------------------------------------- X
:
MANDELA BROCK, :
:
                              Plaintiff, : **MEMORANDUM DECISION AND**
: **ORDER**
- against - :
: 17-cv-5827 (BMC)
WILLIAM DEBLASIO, in his individual and :
official capacity; THE CITY OF NEW :
YORK; NEW YORK CITY DEPARTMENT :
OF CORRECTIONS; JOSEPH PONTE, in his :
individual capacity; JANE OR JOHN DOE, :
Chief of Department, in his individual :
capacity; DEPUTY WARDEN ROBIN :
BEAULIEU, in her individual capacity; JANE :
TAYLOR, Shield #405, in her individual :
capacity; "JANE" GOODMAN, Shield :
#1383?, in her individual capacity; "JANE" :
ARIAS, Shield #7280, in her individual :
capacity; JANE & JOHN DOE 1-100, in their :
individual capacities, :
:
                              Defendants. :
:
X
----------------------------------------------------------

**COGAN,** District Judge.

      Plaintiff brings this *pro se* action under 42 U.S.C. § 1983, alleging that individuals employed by the New York City Department of Correction ("DOC") violated his rights while he was detained at the Brooklyn Detention Complex. The United States District Court for the Southern District of New York transferred the action to the Court. Plaintiff's request to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915 is granted. For the reasons stated below, plaintiff's complaint is dismissed.

## BACKGROUND

The following facts are drawn from plaintiff's complaint, the allegations of which are assumed to be true for purposes of this order. Plaintiff alleges that while detained at the Brooklyn Detention Complex, he was subject to "unlawful twenty-four (24) hour lockdowns." Specifically, plaintiff asserts that when Tactical Search Operations ("TSO") were conducted, inmates were required to return to their cell, where they remained locked in for twenty-four hours or until the search ended. As a result of the lockdowns, plaintiff avers that he was deprived of showers, haircuts, recreation, telephone calls and mail. Plaintiff asserts that being placed in his cell during a lockdown was "punitive segregation." Plaintiff seeks monetary damages.

## STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is "frivolous" when either: (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is 'based on an indisputably meritless legal theory.'" Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (internal citation omitted). At the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 123 (2d Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)). A complaint must, however, plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the plaintiff's *pro se* complaint liberally and interpret it raising the strongest arguments it suggests. See e.g. Erickson v. Pardus, 551 U.S. 89 (2007).

**DISCUSSION**

In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." Morris–Hayes v. Board of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 159 (2d Cir. 2005). Additionally, where, as here, a plaintiff is seeking money damages against the defendants, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite" to recovery under Section 1983. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citing Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)).

Plaintiff alleges that the institutional lockdowns were a form of punitive segregation and violated his constitutional rights. As plaintiff was a pretrial detainee, the applicable constitutional standard arises under the Due Process Clause of the Fourteenth Amendment, not the Cruel and Unusual Punishment Clause of the Eighth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). To determine if a Fourteenth Amendment Due Process violation has occurred, a court first asks "whether there exists a liberty or property interest of which a person has been deprived," and if so, "whether the procedures followed by the State were

constitutionally sufficient." Victory v. Pataki, 814 F.3d 47, 59 (2d Cir. 2016) (internal quotations omitted).

Although pretrial detainees do not lose all their constitutional protections by reason of their confinement, the fact of confinement and the legitimate goals and policies of penal institutions necessarily limit the constitutional rights of prisoners. Bell v. Wolfish, 441 U.S. 520, 545-46 (1979). The Supreme Court recognizes the maintenance of institutional security and the preservation of "internal order and discipline as essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Id. at 546. Therefore, prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547.

An inmate "who experiences a deprivation arising under mandatory rules has no actionable due process claim if other prisoners experience approximately the same deprivation in the ordinary administration of the prison ...." Vega v. Lantz, 596 F.3d 77, 83 (2d Cir. 2010) (internal quotations omitted). Plaintiff's own allegations show that the lockdowns at the Brooklyn Detention Complex were not arbitrary. Rather, plaintiff asserts that they were in direct response to a search of the institution. Any deprivation that plaintiff may have suffered was similar to that experienced by the other inmates at the Brooklyn Detention Complex. Thus, plaintiff's allegations are insufficient to implicate a protected liberty interest. See Corley v. City of New York, No. 14 CV 3202, 2017 WL 4357662, at *10 (S.D.N.Y. Sept. 28, 2017) (plaintiff's complaint failed to plausibly allege that the lockdown or lock-in practices amounted to a due process violation).

Plaintiff's allegations may also be construed as raising a claim based on the conditions of confinement. In order to establish a violation of the Fourteenth Amendment in the context of a challenge to the conditions of confinement,

> a pretrial detainee must satisfy two prongs, ... an "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a "subjective prong"—perhaps better classified as a "*mens rea* prong" or "mental element prong"—showing that the officer acted with at least deliberate indifference to the challenged conditions.

Darnell, 849 F.3d at 29.

In this case, plaintiff alleges that the lockdowns resulted in the temporary deprivation of his use of the showers, use of the law library, recreation and receiving a haircut. However, such allegations fail to rise to the level of a cognizable constitutional claim as the alleged deprivations were not sufficiently serious and there is no indication that defendants acted with deliberate indifference to plaintiff's health or safety. See Patterson v. Ponte, No. 16 Civ. 3156, 2017 WL 1194489, at *5 (S.D.N.Y. Mar. 30, 2017) (plaintiff's claim that he was denied the use of the barbershop and recreation time does not amount to a constitutional violation); Brooks v. NYC DOC Commr., No. 14 CV 6283, 2016 WL 4530456, at *5 (E.D.N.Y. Aug. 29, 2016) (plaintiff did not suffer a serious deprivation of rights because of being unable to shower during lockdowns); Johnson v. Nassau Cnty., No. 13 CV 6510, 2014 WL 294250, at *6 (E.D.N.Y. Jan. 24, 2014) (holding that the plaintiff "failed to state a plausible claim for relief" regarding access to prison law library because he "made no allegations regarding an actual injury he suffered due to the allegedly inadequate law library or insufficient access to the law library"); Banks v. Argo, No. 11 CV 4222, 2012 WL 4471585, at *4 (S.D.N.Y. Sept. 25, 2012) ("[E]ven assuming prison officials denied Plaintiff shower access for the entire time alleged in his complaint – thirteen days – his claim still fails as a matter of law.") (citing McCoy v. Goord, 255 F. Supp. 2d 233,

260 (S.D.N.Y. 2003) ("[A] two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs.'")). Accordingly, plaintiff's condition of confinement claim is dismissed.

## CONCLUSION

Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B). The Clerk of Court is directed to enter judgment dismissing the action. The Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated: Brooklyn, New York  
      October 9, 2017

U.S.D.J.